# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-2278

_____

United States of America

*Plaintiff - Appellee*

v.

William Waldemar Godoy, also known as Raul Alexander Vasquez-Godea, also known as Juan Carlos Rivas-Rivas, also known as Juan Garcia, also known as Juan Perez-Garcia

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Southern

_____

Submitted: February 12, 2025
Filed: July 11, 2025

_____

Before SMITH, KELLY, and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

William Waldemar Godoy was charged with offenses related to trafficking people from Guatemala to South Dakota. The Government gave notice that it would introduce trial testimony from two of his alleged victims, Brian Corado Ordonez and Juan Rivera Ruiz, that Godoy beat his cousin, Edwin Josué. Although Josué was

not a victim of the crimes charged in the indictment, the Government argued that the testimony was intrinsic because it showed a pattern of assaultive conduct and it was admissible under Federal Rule of Evidence 404(b).  Godoy filed a motion in limine to exclude the testimony of both witnesses, but the district court[1] ruled the testimony was admissible on both grounds.

At trial, Corado Ordonez testified that Godoy charged him around $16,000 to bring him into the United States and that he lived at Godoy's house.  Godoy charged up to 15% interest *per week*, which he could not afford to pay despite working several jobs.  When he fell behind, Godoy threatened him and sent people to his mother in Guatemala demanding she sell her house to make good on Corado Ordonez's debt.  Corado Ordonez also testified that Godoy used a Spanish idiom that literally translates to "money makes the dogs dance," which he understood as a threat against his family.  When the Government asked Corado Ordonez if this worried him, he blurted out:

> Yes.  It worries me a lot.  And this is what I want to say, that if tomorrow something happens to me or to my family, that the only person I've ever had problems with is with him.  I don't have any enemies here.  So if something would happen to me or my family in Guatemala or here, it's -- he is responsible.

Defense counsel objected and, out of the presence of the jury, moved for a mistrial and to strike the testimony.  The district court overruled the objections and denied a renewed motion for a mistrial after the close of evidence.  The court also refused to give a limiting instruction.

Corado Ordonez also testified—as permitted by the district court's pretrial ruling—that Godoy beat Josué, who was forced to live in Godoy's garage with a dog, because Josué was also behind on his debts.  When Ruiz took the stand, he too testified that Godoy threatened him and that he saw Godoy beat Josué, but notably

---

[1]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota.

he did not say why—Ruiz did not know if the beatings were because of unpaid debts. The jury convicted Godoy of most of the charges[2] but acquitted him of a forced labor count involving Ruiz.

Godoy first challenges the denial of his motion in limine, which we review for an abuse of discretion. *See United States v. Brown*, 122 F.4th 290, 296 (8th Cir. 2024). While Godoy moved below to exclude the Josué-related testimony of both Corado Ordonez and Ruiz, his brief on appeal focuses on Ruiz's testimony. Appellant Br. 11–14. He emphasizes that because Ruiz, unlike Corado Ordonez, did not know *why* Godoy beat Josué, his testimony could not be used to establish a scheme, pattern, or plan that Godoy was using threats and violence *to collect debts*.

Even if this is right, Ruiz's testimony was admissible intrinsic, or *res gestae*, evidence.[3] *Res gestae* evidence is "evidence of wrongful conduct other than the conduct at issue offered for the purpose of providing the context in which the charged crime occurred." *United States v. Campbell*, 6 F.4th 764, 771 (8th Cir. 2014) (cleaned up). "Such evidence is admitted to complete the story or provide a total picture of the charged crime." *United States v. Parks*, 902 F.3d 805, 813–14 (8th Cir. 2018). That Godoy beat Josué—for whatever reason—gave the jury the total picture of what happened. The assaults occurred close in time to when Godoy threatened both Corado Ordonez and Ruiz, and Josué was living at Godoy's house, just like Corado Ordonez and Ruiz. Even if Ruiz did not know the motive for the beatings, his testimony sets the backdrop against which the jury could understand

---

[2]Godoy was convicted of illegal reentry after deportation, 8 U.S.C. § 1326(a); trafficking with respect to peonage, slavery, involuntary servitude or forced labor, 18 U.S.C. §§ 1590 & 1594; three counts of harboring aliens, 8 U.S.C. § 1324(a)(1)(A)(iii) & (iv); extortion, 18 U.S.C. § 1951; and possession of a firearm by a prohibited person, 18 U.S.C. §§ 922(g)(5) & 924(a)(2).

[3]Because the testimony was admissible as intrinsic evidence, we do not address its admissibility under Rule 404(b). *See United States v. Riebold*, 135 F.3d 1226, 1229 (8th Cir. 1998).

-3-

the threats made to both Corado Ordonez and Ruiz—Godoy was willing and able to use violence against those living in his house.[4]

Godoy also appeals the denial of his motion for a mistrial based on Corado Ordonez's "if tomorrow something happens to me or to my family" outburst. We review for an abuse of discretion, considering whether the complained-about testimony was unsolicited, whether the Government's line of questioning was reasonable, if there was a limiting instruction, if there was evidence of Government bad faith, and whether the problematic testimony was a small part of the evidence against Godoy. *United States v. Beckham*, 917 F.3d 1059, 1067 (8th Cir. 2019).

Corado Ordonez was a difficult, overeager witness. As Godoy points out, the transcript leading up to "he is responsible" is replete with non-responsive answers, sustained objections, and efforts by the district court to get Corado Ordonez to answer the questions he was asked. And everything was being translated, which made things harder for everyone. Because Corado Ordonez's testimony was unsolicited and there was no limiting instruction, Godoy's argument gets some traction under *Beckham*. But all told, we don't think the denial of the motion for a mistrial was an abuse of discretion. The Government, trying to control a difficult witness, was not acting in bad faith. The questions, designed to elicit testimony about Godoy's threats against Corado Ordonez, were relevant. And finally, there was plenty of other testimony in the record showing that Godoy used fear and violence to commit his crimes.

Because there was no abuse of the district court's discretion, we affirm.

_____

---

[4]Godoy also suggests in passing that the testimony—which included a description of Josué as mentally challenged—was "unfairly prejudicial." But that argument—based on Federal Rule of Evidence 403—appears mostly in the context of the district court's Rule 404(b) analysis, which we do not rely on. Beyond that, Godoy does not fully develop this argument.